## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

### Southern Division

| | |
|---|---|
| MARILYN MCDANIEL, ) <br> ) <br> JOE NICHOLS, and ) <br> ) <br> BARBARA GAMBLE, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> G4S SECURE SOLUTIONS (USA), INC., ) <br> ) <br> GUARDSMARK, LLC, and ) <br> ) <br> BASF CORPORATION, ) <br> ) <br>     Defendants. ) <br> ) | 1:12-cv-319 <br> Mattice / Carter <br><br> Civil Action No: <br><br> JURY DEMAND |

---

## COMPLAINT

---

Plaintiffs, Marilyn McDaniel, Joe Nichols and Barbara Gamble, by counsel, respectfully represent to the Court the following as their Complaint against defendants G4S Secure Solutions (USA), Inc., Guardsmark, LLC, and BASF Corporation:

### Nature of Case and Jurisdiction

1.     This is a suit by three employees ("the Guards") who work as security guards for G4S at sites in Chattanooga operated by BASF. Guardsmark employed the Guards at the BASF sites until April of 2011 when G4S succeeded it.

2.    The Guards allege the three defendant companies violated their rights to work for compensation free of discrimination based on gender or race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* and the Equal Pay Act, 29 U.S.C § 206(d).

3.    Since the case alleges violations of federal statutes, it involves federal questions establishing jurisdiction under 28 U.S.C. §1331.

## Parties

4.    McDaniel and Nichols reside in Hamilton County, Tennessee. Gamble resides in Walker County, Georgia.

5.    McDaniel is a black woman, Nichols is a black man and Gamble is a white woman.

6.    G4S is a Florida corporation operating as a provider of security services worldwide, including Tennessee.

7.    Guardsmark is a Delaware limited liability company providing security services worldwide, including Tennessee.

8.    BASF is a Delaware corporation manufacturing chemicals at facilities worldwide, including Tennessee.

## Facts

9.    McDaniel became a full-time security guard for Guardsmark at a BASF Chattanooga site on or about March 10, 2008.

10.    Nichols became a full-time security guard for Guardsmark at a BASF Chattanooga site on or about January 1, 2010.

11.    Gamble became a full-time security guard for Guardsmark at a BASF Chattanooga site on or about the end of November, 2008.

12.     On or about March 10, 2008, Guardsmark hired a white male, Larry Croft, as a full-time security guard at a BASF Chattanooga site. Six to nine months after Guardsmark hired Croft, it gave him a raise to $11.28 per hour.

13.     The Guards were not given a raise to $11.28 per hour when they attained the same time in full-time service as Croft had attained when he received his raise. In fact, the Guards at the present make $9.23 per hour.

14.     Presently, the only other full-time white male security guard at a Chattanooga BASF site, Chris Dawn, makes $11.28 per hour and was being paid at this rate when Croft received his raise.

15.     The Guards complained to Guardsmark management about the pay disparity between themselves and Croft/Dawn after they were not given raises as Croft was given. Guardsmark ignored their complaints.

16.     In April, 2011, G4S replaced Guardsmark as the provider of security guards at the Chattanooga BASF sites. G4S retained the same pay rates for each guard as Guardsmark.

17.     The Guards complained to G4S management about the pay disparity between themselves and Croft/Dawn, immediately before and after G4S assumed management responsibility.

18.     G4S Area Supervisor John O'Rourke informed the Guards he would address their concerns.

19.     For about eighteen weeks after the Guards complained to G4S, Gamble's pay increased to $11.28 per hour, but McDaniel's and Nichols' did not.

20. In approximately the late summer of 2011, O'Rourke told the Guards their complaint had been relayed to BASF management, which made the decision not to change their pay. BASF supplies the funds to G4S to pay the Guards, just as it had done with Guardsmark.

21. At this time, Gamble's pay was reduced back to $9.23 per hour. When she complained to O'Rourke, he told her she would never make the same as the men. When she asked him, "Isn't that discrimination?, he said, "Don't go there, Barbara."

22. In fact, BASF management did make the decision not to increase the Guards' pay. BASF thereby acted directly or indirectly in relation to the Guards in the interest of an employer, trying to save itself money and denying relief to employees making equal opportunity complaints.

23. None of the defendant corporations have informed the Guards, or anyone in their behalf, of any specific reason for the pay disparity having to do with duties performed or qualifications.

24. In fact, in relation to the Guards, Croft and Dawn perform the same duties and have no superior applicable qualifications.

25. No full-time, non-supervisory female or black security guard at the BASF Chattanooga sites earns as much as $11.28 per hour. The Guards have long-since passed the time in full-time service as BASF Chattanooga-site security guards as Croft had when his pay went to $11.28 per hour.

26. All three defendant corporations have known about the illegal pay disparity for extended periods of time and have willfully failed to correct it.

## Title VII Violations

27. G4S' conduct as described above violates Title VII on the basis of race and gender as to McDaniel.

28. G4S' conduct as described above violates Title VII on the basis of race as to Nichols.

29. For its violations of Title VII, G4S is liable to McDaniel and to Nichols for back pay, injunctive relief ordering equal pay to white males on an ongoing basis, and damages for mental anguish, humiliation and embarrassment, attorneys' fees and costs.

30. G4S' conduct after the Guards complained evidences reckless disregard for the federally protected rights of Nichols and McDaniel to compensation free of race and gender bias. Therefore, G4S is also liable to Nichols and McDaniel for punitive damages.

31. (i) Gamble has Title VII claims for gender discrimination in pay against G4S and BASF, which she expects to pursue administratively with the Equal Employment Opportunity Commission and later join to this suit. (ii) McDaniel has Title VII claims for race and gender discrimination in pay against BASF which she expects to pursue administratively with the Equal Employment Opportunity Commission and later join to this suit. (iii) Nichols has a Title VII claim for race discrimination in pay against BASF which he expects to pursue administratively with the Equal Employment Opportunity Commission and later join to this suit.

## Equal Pay Act Violations

32. The conduct of all three defendants as described above violates the Equal Pay Act as to McDaniel and Gamble.

33. The conduct of all three defendants entitles McDaniel and Gamble to back pay, injunctive relief to equalize their pay with males, attorneys' fees and costs.

34.     Because the conduct of the defendants was willful, it also entitles McDaniel and Gamble to liquidated damages.

### Request for Relief

Wherefore, plaintiffs Marilyn McDaniel, Joe Nichols and Barbara Gamble respectfully request that the Court convene a jury to try their claims, and that the Court thereafter enter judgment for them against Defendants for equitable relief, compensatory and punitive damages, attorneys fees and costs.

Respectfully Submitted,

MARILYN MCDANIEL

JOE NICHOLS

BARBARA MCDANIEL

By Counsel

James M. Johnson
BPR #026147
620 Lindsay Street
Suite 210
Chattanooga, TN 37403
(423) 648 4093
(423) 648 4094 (fax)
jj@jamesmjohnsonatty.com

Counsel for Plaintiffs